NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

**FILED**

JAMES J. WALDRON, CLERK

[March 31, 2014]

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY:  Christopher Fowler, Deputy

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| TERRENCE G. MOELLER, | CASE NO.  09-17417 (GMB) |
| Debtor. |  |
| JOHN J. LEWANDOWSKI and
JUDITH M. LEWANDOWSKI, h/w;
LAWRENCE P. QUINLAN and MAUREEN P.
QUINLAN, h/w; EDWARD ZAWISZA;
and RAYMOND A. ZAWISZA, | ADVERSARY NO. 11-1008(GMB) |
| Plaintiffs, |  |
| v. |  |
| TERRENCE G. MOELLER, HI-TECH
HOMES, INC., CATHERINE MOELLER,
FREEDOM TITLE & ABSTRACT, INC.,
CATHLEEN MACKIE, and
JANE/JOHN DOES #1-5, | MEMORANDUM OPINION |
| Defendants. |  |

APPEARANCES:	Harry J. Levin, Esq.
Levin Cyphers
700 Hooper Avenue
Toms River, NJ 08753
Attorney for Plaintiffs

Terrence Moeller
111 Kensington Drive
Smithville, NJ 08205
Appearing Pro Se

1

This matter comes before the Court upon the filing of an adversary complaint by Plaintiffs Raymond Zawisza ("R. Zawisza"), Edward Zawisza ("E. Zawisza"), John J. Lewandowski and Judith M. Lewandowski ("Lewandowski"), Laurence P. Quinlan and Maureen P. Quinlan, ("Quinlan"), collectively (the "Plaintiffs"). Plaintiffs ask this Court to determine the dischargeability of a debt owed by the Debtor, Terrance Moeller ("Debtor"), pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(B) of Title 11 of the United States Bankruptcy Code, for debts allegedly arising through fraud.

Plaintiffs contend that the Debtor fraudulently induced them to enter into home construction contracts, never intending to convey good title. Further, Plaintiffs allege that when obtaining a refinancing loan on the construction project, secured in part by their homes, the Debtor fraudulently misrepresented his intentions, both to them and to the refinancer, resulting in the need for the Plaintiffs to essentially pay for their homes a second time.

For the reasons more fully outlined below, the Court concludes that the Plaintiffs have failed to meet their burden of proof on all the issues and therefore finds Plaintiffs' claims dischargeable.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b), and the Standing Order of the United States District Court for the District of New Jersey dated July 23, 1984 as amended Sept. 18, 2012, referring all bankruptcy cases to the bankruptcy court. This is a core proceedings within the meaning of the 28 U.S.C. 157(b)(2)(I), dealing with determining the dischargeability of particular debts.  Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

**PROCEDURAL HISTORY**

The Debtor, a co-defendant in the present case, filed for relief under chapter 7 of the Bankruptcy Code on March 27, 2009. On July 14, 2009, the Debtor received a discharge. The Plaintiffs subsequently moved to re-open the case and file an adversary

against the Debtor. The Court Ordered the case reopened on January 3, 2011, and the Plaintiffs filed the current adversary on January 4, 2011.

Plaintiffs initiated this adversary proceeding against the Debtor, Catherine Moeller, Hi-Tech Homes, Freedom Title & Abstract, Inc., Cathleen Mackie, TEB Associates, Inc. and Jane/John Does #1-5 for non-dischargeability of debts pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(2)(B), as against the Debtor/Defendant, Terrence G. Moeller, by way of complaint for damages as to all other non-debtor defendants, and by way of complaint for violation of the New Jersey and Federal Racketeer Influenced and Corrupt Organizations Acts as to all defendants.

On April 14, 2011, this Court dismissed all counts against Catherine Moeller, all claims of New Jersey Racketeer Influenced and Corrupt Organizations Act ("RICO") violations against all Debtors and all Federal RICO Claims against all Defendants without prejudice. The Court, upon motion of TEB Associates, Inc. ("TEB"), granted Summary and Final Judgment in favor of TEB, and against Plaintiffs on March 1, 2013. Amidst various other motions for summary judgment, on May 16, 2013, the Court granted Summary and Final Judgment in favor of Freedom Title and Abstract, Inc. and Cathleen Mackie.

Having denied all other motions, on August 28, 2013, this Court conducted a trial against the Debtor on Plaintiffs' Count 1 of their Amended Complaint, dischargeability of a Debt under 11 U.S.C. § 523(a)(2)(A). Plaintiffs abandoned the remaining claims against Debtor as well as Hi-Tech, a now defunct corporation.[1] The Debtor proceeded pro-se. At the conclusion of the trial, the Court took the issue under advisement, subject to the submission of the deposition of Plaintiffs' witness, Bob Black, who was unable to appear. As the Court has now received the deposition, this decision constitutes the Court's final findings of fact and conclusions of law.

---

[1] Plaintiffs' pre-trial brief only refers to Count 1, non-discharability under section 523(a)(2)(A) and makes no mention of Plaintiffs' remaining claims against Debtor or Hi-Tech.

**FINDINGS OF FACTS**

Debtor Terrence G. Moeller was the President, principal agent, and sole shareholder of Defendant Hi-Tech Homes, Inc. ("Hi-Tech") who during the period in question, was in the business of home development. Between 1996 and 2000, Plaintiffs purchased homes constructed by Hi-Tech on subdivided lots the company had purchased in Little Egg Harbor, New Jersey.

**Plaintiffs' Contracts**

In February of 1997, R. Zawisza entered into an agreement with Hi-Tech to purchase lot 1.09, Block 325.40, otherwise known as 1138 Radio Road, Little Egg Harbor, New Jersey (Ex. P-1.) Hi-Tech was to construct a one-family dwelling similar to a model home sample and R. Zawisza agreed to pay $148,400, payable in increments. The amount of $43,920 was paid as a deposit and another $40,000 was due at the signing of the agreement. In addition, $40,000 was to be paid at framing of the house and $25,480 at closing. The closing was to take place within ten days after issuance of a "Certificate of Occupancy" for the premises. (Ex. P-1.) [2]

In September 2000, Lewandowski entered into an agreement with Hi-Tech; whereby Hi-Tech would construct a home for them on Lot 1.16 Block 325.40, otherwise known as 1124 Radio Road, Little Egg Harbor, New Jersey. (Ex. P-3.)The purchase price was $158,000. The contract outlined that Lewandowski paid Hi-Tech an initial $1,000 deposit and $14,800 at signing of the contract. Another $142,200 was due to Hi-Tech over the course of construction. The payment schedule was not attached to the contract, but it was generally understood the payments were to be made at major building milestones.

---

[2] Named Plaintiff E. Zawisza also entered into a contract with Hi-Tech homes in 1997 for the purchase of a vacant lot located at 1140 Radio Road, Little Egg Harbor, New Jersey, also known as Lot 1.08 Block 325.40. (Ex. P-8.) Although E. Zawisza is mention in the complaint, Counsel for the Plaintiffs acknowledged at trial and E. Zawisza confirmed, that E. Zawisza was making no claims with regard to the property he purchased. (Trial T., E. Zawisza, 3:15:00pm August 28, 2013.) As such, the Court will deem any claim related to his lot, waived.

That same year, Quinlan also entered into an agreement with Hi-Tech whereby Hi-Tech would construct a home for them on lot 1.15, Block 325.40, also known as 1126 Radio Road, for $158,000, under which, terms of payment were similar to those of the Lewandowski contract. (Ex. P-2.)

Over the course of the construction, all of the homeowners performed their payment obligations under their respective contracts. Any remaining payments were due at closing. Although, no closings occurred, each of the Plaintiffs moved into their homes when construction was finished: R. Zawisza in late 1997, Lewandowski in August 2001 and Quinlan in August of 2001.

**Hi-Tech's Legal Troubles**

In 1996, Hi-Tech purchased land consisting of a 20-lot subdivision in Little Egg Harbor, New Jersey from MaryAnn Gilbert for $450,000. MaryAnn Gilbert took back a mortgage for a sum of $385,500 and was also promised a completed home on one of the lots. Debtor subsequently proceeded to build homes on the subdivided lots and sold approximately 5 to 6 homes in the late 1990s. TEB provided the necessary construction financing, and along with MaryAnn Gilbert, held a blanket mortgage on the entire property.

After storm related flooding in 1999, several homeowners brought a lawsuit against Hi-Tech and certain other parties asserting that the damages resulting from the flooding were due to grading problems on their lots. As a result of the settlement entered into with these homeowners, Hi-Tech was required to rebuild several of the homes, in whole or in part. There were also monetary settlements made. While the lawsuit was pending, a stop-work order was entered on all of the lots in the subdivision, including those built for the Plaintiffs during this time period.

In addition to the ongoing litigation with the homeowners, Hi-Tech ran into problems obtaining the necessary permits for the completed homes from Little Egg Harbor Township. Thus, Hi-Tech became involved in another legal battle, this time with the Township. Hi-Tech's former attorney, Steven Secare, Esq. ("Secare") testified that

5

Little Egg Harbor was "unfairly blocking [Hi-Tech]'s permitting process." (Trial Tr., Secare, 1:15:54pm, August 28, 2013.) Hi-Tech was forced to appeal to New Jersey Division of Consumer Affairs in order to get the required permits. This litigation ended up being a very expensive process and as stated by Secare, "took a large amount of time due to the officials in Little Egg Harbor." (Id.)

During the time in question, Debtor understood that because of the lack of permits from Little Egg Harbor, as well as the pending lawsuits resulting in a stop work order, he could not acquire the required Certificate of Occupancy ("CO") on the Plaintiffs' homes, and therefore he could not proceed to closing. Testimony of all parties indicated he informed all of the homeowners of the continued problems with the Egg Harbor Township and acquiring title. In order to appease homeowners, Debtor offered some buyers returns on their deposits, and allowed others, such as the Plaintiffs, to move into their homes without CO's. Secare testified that the Debtor's character was impeccable during this process; he acted in good faith, and did everything he could to get the project completed.

### Final Attempts to Clear Title

In May of 2004, as a final attempt to clear title to the remaining homes subject to construction liens, Hi-Tech engaged in refinancing with TEB. The existing construction loan with TEB as of May of 2004 was approximately $330,000 and its lien covered Plaintiffs' properties. As a result of refinancing, the TEB loan increased to $900,000, secured still by its lien upon the same properties, and an additional three properties upon which the Debtor was constructing, or planned to construct, homes.

In addition to satisfying the existing $330,000 TEB construction loan, refinancing also paid many other liens encumbering the Egg Harbor properties. First, according to Plaintiffs' Exhibit 4, Freedom Title/Abstract Settlement Sheet dated May 13, 2004, a large number of tax certificates were redeemed (Ex. P-4), including those which encumbered Plaintiffs' properties, as well as existing taxes. Over $425,000 was used to satisfy survey fees, loan origination fees, attorney fees, title insurance, and other existing

6

liens on the properties. No cash was distributed to Hi-Tech.[3] No payment was evidence by the settlement sheet to satisfy the first mortgage of MaryAnn Gilbert, which existed prior to the refinancing and encumbered Plaintiffs properties.

In fact, the encumbrance on Plaintiffs homes remained generally unchanged as four lots secured the original $330,000 lien, and as a result of the refinancing, seven lots secured a $900,000 loan. It was Debtor's belief at the time, that the sale of the four properties other than those upon which the Plaintiffs' homes were build, would garner sufficient funds to reduce the debt to TEB and facilitate the release of Plaintiffs' homes. The Plaintiffs themselves were not informed of the refinancing.

**Plaintiffs' Legal Actions**

According to testimony presented at trial, the Plaintiffs knew they had not received title and no closings had taken place. After allegedly pursuing Debtor and Hi-Tech for title for several years, in or around 2003, the Lewandowskis and the Quinlans sought legal counsel to aid them in obtaining title to their homes. They retained Howard Butensky, Esq., ("Butensky"), to represent their interests with respect to their properties. In 2003, Butensky ran a title search and discovered a large number of construction and tax liens encumbering Hi-Tech properties, including the homes they inhabited. The Plaintiffs, regardless of this knowledge, did not pursue further action at the time, relying on the statements of Butensky who told them the Defendant always came through in the end. (Trial Tr., Lewandowski, 2:49:29pm, August 28, 2013).

Sadly, this was not the case as Hi-Tech defaulted on its 2004 refinancing loan with TEB and as a result, Lewandowski and Quinlan received notices of foreclosure on their respective properties. It was at this time they went back to Butensky. On or about September 5, 2005, Butensky filed two complaints for specific performance on behalf of the Lewandowskis and the Quinlans in the Superior Court of New Jersey, Chancery Division.  The only party named as a defendant in both suits was Hi-Tech Homes, Inc.

---

[3] The HUD-1 also indicates that $10,000 out of the $900,000 paid to "MTG 4524/9532B Moeller Release." Plaintiff offered no evidence that Debtor received the money and Debtor testified that he received no funds from the closing.

7

The Lewandowskis and the Quinlans placed the last payment of their contracts, $14,800 each in escrow at this time, for a potential closing. (Lewandowski Testimony 2:51). The case was thereafter settled and as a result of settlement, Hi-Tech delivered the Lewandowskis and the Quinlans their respective deeds to 1124 and 1126 Radio Road. Upon acquiring this title, both took the money out of escrow and put it towards taxes that had accrued on their properties. Plaintiff R. Zawisza took title to his property on January 14, 2010, still encumbered with the TEB mortgage, approximately 13 years after taking possession of the property.

Even though Plaintiffs received deeds, their properties were still encumbered by several liens and mortgages, including the first mortgage held by MaryAnn Gilbert[4] and the TEB mortgage. In January of 2010, Plaintiffs independently sought out representatives of TEB. According to Mr. Lewandowski, they did so because they wished to gain clear title and hoped they could come to a resolution with TEB without Debtor's input. As a result of their negotiations, Plaintiffs each entered into an agreement to pay $250,000 to TEB for release of the lien on their homes. After making these payments, Plaintiffs subsequently filed suit against Debtor in New Jersey State Court, an action that was stayed due to the Debtor's pending bankruptcy.

**DISCUSSION**

A preliminary matter must be decided before this Court can determine the issue of non-dischargeability under 11 U.S.C. § 523. All contracts and events at issue were between Hi-Tech homes and the Plaintiffs. Thus, the Court must determine that Plaintiffs are in fact creditors of the Debtor. Hi-Tech's president, sole shareholder, and possible sole full-time employee was Debtor, who knowingly directed Hi-Tech's use of the funds provided to it by Plaintiffs. Whether an entity holds a claim against the debtor is generally determined by relevant non-bankruptcy law, typically state law. In re Bath, 442 B.R. 377, 390 (Bankr. E.D. Pa. 2010). As stated by a New Jersey appellate court:

---

[4] This lien was subsequently satisfied via title insurance.

8

> Any corporate officer, or director who participates by aid, instigation, or assistance in a conversion, is liable.... A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character, but, a director or officer who commits a tort, or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort.... Corporate officers are liable to persons injured by their own torts, even though they were acting on behalf of the corporation and their intent was to benefit the corporation.

Charles Bloom & Co. v. Echo Jewelers, 652 A.2d 1328, 1243 (N.J. App. Div. 1995)(citations omitted); see In re B.S. Livingston & Co., Inc., 186 B.R. 841, 866 (D.N.J. 1995). Therefore, to the extent Hi-Tech failed to garner title to the plaintiffs, having previously deposited their funds, it did so by acting through Debtor. In so doing, Debtor is not insulated by Hi-Tech's corporate status. In re Bath, 442 B.R. 377, 393-94 (Bankr. E.D. Pa. 2010).

Having established the Plaintiffs can pursue their non-dischargeability action against the Debtor, the Court will now consider if the Plaintiffs have in fact met their burden of proof to demonstrate that the Debtor acted in such a manner to deny discharge under 11 U.S.C. § 523.

**Non-dischargeability under 11 U.S.C. § 523(a)(2)(A)**

One of the primary purposes of bankruptcy is to provide a "fresh start" for the "honest but unfortunate debtor." Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 367 (2007). Bankruptcy is meant to relieve a debtor from "the weight of oppressive indebtedness and permit him to start afresh." Boston University v. Mehta (In re Mehta), 310 F.3d 308, 311 (3d Cir.2002). Notwithstanding this principal, the Bankruptcy Code does not allow for debts incurred through fraud to be discharged. This is codified in § 523(a)(2)(A) of the Bankruptcy Code which provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition. . . .

9

11 U.S.C. § 523(a)(2)(A) (2012). "Where a debtor has committed fraud under the code, he is not entitled to the benefit of a policy of liberal construction against creditors." Cohen v. De La Cruz, 106 F.3d 52, 59 (3d.Cir. 1997), aff'd 523 U.S. 213 (1998). To invoke the protections of this provision, a creditor must prove, by preponderance of the evidence, that the Debtor committed fraud. See Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Subsection 523(a)(2)(A) does not except from discharge just any debt resulting from a false representation or actual fraud; it excepts from discharge only those debts in which or a false representation or actual fraud was employed to obtain money, property or services. In re Lages, 386 B.R. 590, 598 (Bankr. W.D. Pa. 2008). Intent by the debtor is also required. In re Giquinto, 388 B.R. 152 (Bankr. E.D. Pa. 2008). Thus, the Third Circuit requires that to prevail on a theory of actual fraud under § 523(a)(2)(A):

> (1) the Debtor obtained money, property or services through a material misrepresentation; (2) the Debtor, at the time of the transaction, had knowledge of the falsity of the misrepresentation or reckless disregard or gross recklessness as to its truth; (3) the Debtor made the misrepresentation with intent to deceive; (4) the Plaintiff reasonably relied on the representation; and (5) the Plaintiff suffered loss, which was proximately caused by the Debtor's conduct.

De La Cruz v. Cohen (In re Cohen), 185 B.R. 180, 186 (Bankr.D.N.J.1995) (internal citations omitted).

In the instant case, it is uncontested that the Plaintiffs sustained a loss. They paid an additional $250,000 over and above their contracted price in order to retain good title to their homes. Nevertheless, the Plaintiff has failed to establish the remaining elements required to prove fraud under § 523(a)(2)(A).

**1. Whether the Debtor intended to abide by the contract**

"It is a matter of well-entrenched jurisprudence that a contractor's failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud, misrepresentation or false pretenses under §523(a)(2)(A). . . Otherwise, almost any debt arising out of a failure to complete a contract would be nondischargeable and that is not the way the statute is written." Strominger v. Giquinto (In re Giquinto), 388 B.R. 152,

10

166 (Bankr. E.D. Pa. 2008). Instead, the plaintiff must establish that the debtor entered into the contract, never intending to adhere to its terms. In re Maurer, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990).

The Plaintiffs initially contended that Debtor never intended to fulfill the contracts performance, as he knew Hi-Tech did not have title to convey. Trial testimony does not support this view. To the contrary, the weight of the evidence demonstrates that Hi-Tech entered into all four contracts with the intent of completing them. At all stages of the construction, the Debtor completed his obligations as outlined. It was only upon closing that the Debtor failed to comply and as such Hi-Tech was never paid the last payment. The Court finds the testimony outlining the numerous steps taken by the Debtor to clear title persuasive. Debtor and Secare's testimony establishes that Debtor engaged the services of many attorneys, worked with the Township of Little Egg Harbor, and even let the Plaintiffs move into the homes under the belief that he would eventually be able give them title to their homes. The fact that title was never transferred does not demonstrate he never intended to do so from the outset. Thus, the Plaintiffs failed to show that Debtor acted with the requisite fraudulent intent upon entry into the contract.

**2. Whether the Debtor made other representations which amounted to actual fraud in relation to the TEB refinancing in 2004**

Plaintiffs further assert that their reliance on Debtor's representations prior to the 2004 TEB refinancing also amounted to fraud. They allege that he intentionally mislead them by not disclosing the fact that Hi-Tech entered into a refinancing agreement with TEB. In the alternative Plaintiffs argue that Debtor acted fraudulent by not disclosing to TEB that the Plaintiffs inhabited property securing the refinancing. As a result, they argue that Debtor benefitted from this nondisclosure as he was able to use the homes they inhabited as collateral for a larger loan to prolong the operations of Hi-Tech.

**(a) The debtor failed to obtain money, property or services through a material misrepresentation**

The first element of fraud pursuant to Section 523(a)(2)(A) requires a material misrepresentation that includes words (written or oral), conduct, or omissions. See Shaw

11

v. Santos (In re Santos), 304 B.R. 639, 661 (Bankr.D.N.J.2004). This representation can come in the form of silence. AT & T Universal Card Services v. Mercer (In re Mercer), 246 F.3d 391, 404 (5th Cir.2001)( Silence can qualify as a representation for purposes of § 523(a)(2)(A) when one is obligated to speak but does not). The Third Circuit has followed the Eighth Circuit's approach that silence can rise to the level of fraud, where it pertains to a material fact. In re Azeglio, 09-16476/JHW, 2010 WL 4864439 (Bankr. D.N.J. Nov. 23, 2010)(citing In re Docteroff, 133 F.3d 210, 216 (3d Cir. 1997); In re Trombadore, 201 B.R. 710, 714 (D.N.J. 1996), aff'd, 129 F.3d 1256 (3d Cir. 1997).

In In re Nicolai, 05-29876, 2007 WL 405851 (Bankr. D.N.J. Jan. 31, 2007), a property owner sought relief under 11 U.S.C. §523(a)(2), alleging that the debtors made a series of misrepresentations about their ability to obtain financing to purchase the piece of property owned by the plaintiff with the intent to induce the plaintiff to allow them to continue to possess the property. Id. at *1. In finding for the debtors, the Court held that the debtors did not make any statements about their ability to obtain financing with deceptive intent. Id. at *3. In fact, the Court relied on evidence that the debtors had listed other property to sell and took other steps in order to facilitate the eventual purchase of the plaintiff's property. In addition, debtors invested substantial resources in the plaintiff's property because they intended to buy it. Id. at *3.

Like the Nicolai debtor, the Court finds that the Debtor here did not make a material misrepresentation. Over the course of several years, and with the aid of many attorneys, Debtor believed he could eventually give Plaintiffs good title. He invested significant personal income in his attempts. His last attempt in 2004 was a large refinancing through which he gained no profit and paid off tax liens that encumbered Plaintiffs' homes.

Furthermore, there is no proof that Debtor personally gained from the refinancing. In fact, the $900,000 was used to pay off already existing loans secured by the Debtor's homes and also went to pay their taxes. The remaining money was put towards other obligations of Hi-Tech. Debtor himself did not profit from this exchange.

Moreover, Plaintiffs point to actions by Debtor which occurred *after* the Plaintiffs signed their contracts and paid the contractually agreed to payments. Plaintiffs failed to produce evidence that because of the alleged misrepresentations to them, the Debtor acquired additional money, property or services from them individually. In fact, all that actually occurred was that Hi-Tech paid off existing liens encumbering properties including those upon which Plaintiffs lived.  Plaintiffs did not personally contribute anything at the time of the refinance. At that point, regardless of the fact that Plaintiffs were residing in the properties, they were still owned by Hi-Tech.

As to Plaintiffs' assertion that Debtor made a material misrepresentation to TEB, the Court does not find the Plaintiffs have provided sufficient evidence that (1) the Debtor materially misrepresented to TEB that they were living in the homes; (2) TEB would not have loaned the money if they knew Plaintiffs were inhabiting the properties; and/or (3) that Hi-Tech or the Plaintiff gained any benefit from the refinancing.   In fact, the deposition testimony from Bob Black, TEB's representative states:

> Q: Did you happen to notice when you did your due diligence on these properties did you notice that people, human beings were living in any one or more of these homes?
>
> A: I don't recall
>
> Q: Did you have an understanding that at the time you made these lending decisions that it was Hi-Tech Homes that was the legal owner of the properties?
>
> A: Yes
>
> Q: And the fact that there were houses on some of the properties that you were using as collateral it didn't cause you any pause at all?
>
> A: No, sir.
>
> Q: Okay. Well –
>
> A: I'm not merely going to ad lib, but these homes were – the collateral we based on subject to title reports so we would not – we would not know if it wasn't on the title report that it was owned by someone else. We were given title, clear title.

13

(Deposition, Robert J. Black, July 20, 2009, p. 22-23.) Plaintiffs failed to submit evidence that Debtor made a material misrepresentation to TEB. In Black's own words, he found it irrelevant that there were people living in homes on land securing his loan, as they did not appear on the title documentation. Further, at no point did he state that Debtor told him either way about the status of these inhabitants. Therefore, notwithstanding the fact that the misrepresentation was not made to the Plaintiffs, they failed to demonstrate a material misrepresentation was made at all.

### (b) Debtor did not have requisite knowledge that the representation was false nor the intent to deceive Plaintiffs

The second factor concerns whether the debtor, at the time he made the representation knew it was false, or if he made the representation with gross recklessness to its truth. In re Cohen, 191 B.R. 599, 605 (D.N.J.1996). The issue of intent requires actual or positive intent. In re Azeglio, 09-16476/JHW, 2010 WL 4864439 (Bankr. D.N.J. Nov. 23, 2010). Because "a debtor will rarely, if ever, admit that deception was his purpose, intent to deceive can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." Insurance Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d 1108, 1118-19 (3d Cir. 1995).

In In re Barr, the Bankruptcy Court for the Northern District of Illinois, Eastern Division, denied a non-dischargeability claim against a builder who allegedly misrepresented he would build a quality home to the plaintiffs. In re Barr, 194 B.R. 1009, 1020 (Bankr. N.D. Ill. 1996).The Court found that the plaintiffs had failed to show that the builder never intended to procure a permanent Certificate of Occupancy as he promised at closing. Id. at 1020. Nor did he have the requisite fraudulent intent in representing his skills or ability to build a home. Id. at 1021. The Court reasoned that he had built many homes before, this was his normal procedure, and the plaintiffs failed to produce evidence that he intended to fail in their case, or that he knowingly did so. Id.

Like the plaintiffs in Bar, the Plaintiffs in the current case have failed to show the requisite fraudulent intent of the Debtor and Hi-Tech. The Plaintiffs argue that Debtor misrepresented to them that he would give them good title to their homes, never

14

intending to do so. Debtor and Hi-Tech had built many homes in the past. There is no proof that the Debtor deliberately withheld title in this case, when he had successfully completed and closed on many homes in the past. Unlike many fraud cases in which a debtor lies to induce payment, this Debtor continued to pursue that which he promised the Plaintiffs until the very end. He consistently attempted to work with creditors and Little Egg Harbor Township in order to facilitate Plaintiffs' home ownership. The evidence presented demonstrates Debtor did everything he could to facilitate closing on Plaintiffs' properties.

Plaintiffs further contend that, prior to his entry into the second TEB loan, Debtor's deliberate failure to disclose to Plaintiffs the refinancing, amounted to fraud. Plaintiffs have not established that the Debtor had intent to hide the corporation's refinancing from them, but even if he did, the non-disclosure did not amount to fraud or recklessness on Debtor's behalf. According to the trial testimony, as head of Hi-Tech, he took out many loans, participated in many discussions relating to the financing of the Egg Harbor properties, including Plaintiffs' homes. To him, this was one more project refinancing in order to get the Plaintiffs their homes free and clear of any encumbrance. Testimony indicated this was not abnormal. At the time, Debtor did not believe that he was further encumbering their homes as he added additional collateral to secure the lien.

In addition, Plaintiffs assert that Debtor acted fraudulently in not disclosing to TEB that the Plaintiffs were living in some of the properties securing the loan. As noted above, the facts presented at trial did not establish that the Debtor acted fraudulently with regards to disclosing Plaintiffs' occupancy to TEB. At that time, the property was still owed by Hi-Tech and already subject to a lien. Debtor did not personally gain from any alleged fraud and he entered into the refinancing in order to assist in clearing title to all of his customer's homes. Accordingly, this element of section § 523(a)(2)(A) fails as well.

### (c) The Plaintiffs did not justifiably rely on the Debtor's representations

Non-dischargeability under Section 523(a)(2)(A) requires a showing of "justifiable, but not reasonable, reliance." <u>Field v. Mans</u>, 516 U.S. 59, 74-75, 116 S.Ct.

15

437, 133 L.Ed.2d 351 (1995)). The Supreme Court adopted the following standard for justifiable reliance:

> Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases.

Field v. Mans, 516 U.S. at 70–71, 116 S.Ct. 437 quoting Restatement § 545A cmt. b.19. This has been interpreted as a "minimal threshold," In re Biondo, 180 F.3d 126, 135 (4th Cir. 1999). Furthermore, one requiring a "fairly low" showing. In re Guske, 243 B.R. 359, 363 (8th Cir. BAP 2000).

Applying the justifiable reliance standard to the facts of this case and to Plaintiffs, this court focuses first on the relative positions of the parties. Plaintiffs took occupancy of their homes in the late 1990s and early 2000s, knowing they had not participated in a closing, and did not bring suit until 2004, even though they knew in 2003 their homes were encumbered with liens.

As to the 2004 refinancing, even if the Debtor misrepresented the occupancy status of the homes used as collateral for the refinancing to TEB, which was not proven, the Plaintiffs could not have relied upon it. At that point, Plaintiffs had already paid the Debtor and moved into the homes knowing of the existing liens encumbering their properties, even though they never participated in a closing. They knew, as of the title search done by Butensky in 2003, that there were liens on their homes in excess of $300,000. Thus, there was no further reliance by Plaintiffs on Debtor's silence regarding the TEB loan, as they did not change their position as a result of the refinance.

Lastly, insofar the Plaintiffs assert the representation was to TEB, the plaintiffs have produced no proof that TEB reasonably relied on this misrepresentation, as they have not demonstrated that TEB did not know they were residing on the property or that it would have materially changed TEB's position regarding the loan. As such, Plaintiffs have failed to prove another required element of 11 U.S.C. § 523(a)(2)(A).

16

**CONCLUSION**

    Based upon a thorough review of the record in this matter, including, the testimony of the witnesses, the exhibits submitted into evidence and the relevant case law, the Court finds that Plaintiffs have failed to meet their burden of proving the elements of their claim by the requisite preponderance of the evidence. Therefore, the Court does not find Plaintiffs' claim exempt from discharge in Debtor's bankruptcy under 11 U.S.C. §523(a)(2)(A).

Dated:   March 31, 2014

                                                      Honorable Gloria M. Burns
                                                      Chief Judge, U.S. Bankruptcy Court